Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6943 | **DATE** | 3/30/2001 |
| **CASE TITLE** | ADMINISTRATIVE COMMITTEE, as Admin vs. BRANDON ALEXANDER, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  The Court grants the Plan's motion for summary judgment [8-1,12-1] and denies defendants' cross-motion for summary judgment [21-1]. The Court enters judgment in favor or the Plan $6,275.50. This case is hereby terminated. This is a final and appealable order. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | MAR 3 0 2001 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| CG | courtroom deputy's initials | | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADMINISTRATIVE COMMITTEE, )<br>as Administrator of the ASSOCIATES' )<br>HEALTH AND WELFARE PLAN, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>BRANDON ALEXANDER and )<br>PAMELA ALEXANDER, )<br> )<br>Defendants. ) | Judge Ronald A. Guzman<br><br>99 C 6943 |

DOCKETED
MAR 3 0 2001

## MEMORANDUM OPINION AND ORDER

The Administrative Committee of the Associates' Health and Welfare Plan ("the Administrative Committee") has brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), to enforce the terms of plan, enter an order enjoining defendants from continuing to violate the terms of the plan, and compel defendants to reimburse the Administrative Committee for medical benefits paid on behalf of Brandon Alexander. The Administrative Committee has moved for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56, and defendants have cross-moved. For the reasons provided in this Memorandum Opinion and Order, the Court grants the Administrative Committee's motion and denies defendants' cross-motion.

## FACTS[1]

The Associates' Health and Welfare Plan is a self-funded employee welfare benefit plan that provides group health coverage for participants, their spouses, and their children. (Pl.'s LR 56.1(a)(3) ¶¶ 1-2.) The plan distributes new benefits books, which are the formal plan documents for its health and welfare plan, biannually, and thus the 1998 Benefits Book was the formal plan document for 1998 and 1999 and the governing plan document at all times relevant to the instant action. (*Id.* ¶¶ 7, 19.) In addition, the Associates' Health and Welfare Plan Wrap Document ("Wrap Document") was in effect during the relevant time of the instant action. (Pl.'s LR 56.1(b)(3)(B) ¶ 1.) The Wrap Document, together with the applicable Benefit Book, comprise the plan. (*Id.* ¶ 2.)

On June 12, 1997, Brandon Alexander, the son of Pamela Alexander, a participant in the plan through her employment with Wal-Mart Stores who had named Brandon as a beneficiary, was injured in an automobile accident and required medical treatment. (Pl.'s LR 56.1(a)(3) ¶¶ 12-14.) The Administrative Committee paid out $18,826.52 on behalf of Brandon Alexander for certain medical costs associated with his injuries. (*Id.* ¶ 16.)

Brandon Alexander filed a state court action against the parties considered responsible for his injuries and in 1998, he entered into a settlement agreement and received $45,876.21 from the responsible party. (*Id.* ¶ 18.) Pamela and Brandon Alexander were notified that the Administrative Committee interpreted the plan as requiring 100% reimbursement without

---

[1]These facts are either undisputed or deemed admitted because of defendants' failure to comply with the mandates of Local Rule LR 56.1(a)(3)(A) requiring specific references to affidavits, parts of the record, and other supporting materials in support of any disagreement, a rule which this Court strictly enforces.

2

reduction for attorney's fees and that they had thirty days to appeal that interpretation. (*Id.* ¶ 20.) Defendants refused to reimburse the Plan the full $18,826.52, without reduction for attorney's fees. (*Id.* ¶ 22.) Instead, in Cook County Circuit Court Brandon Alexander filed a Motion to Adjudicate Subrogation Claim against Blue Cross/Blue Shield, the third party administrator of the Plan that has no authority to create policy or make final coverage determinations for the Plan. (*Id.* ¶¶ 23, 26.) Brandon named neither the Plan nor the Administrative Committee as defendants nor did he serve them and therefore, the Administrative Committee did not participate in the state court action. (*Id.* ¶ 24.) On October 14, 1999, the Cook County Circuit Court reduced the purported subrogation claim of Blue Cross/Blue Shield from $18,826.52 to $12,338.42. (*Id.* ¶ 25.) Brandon and Pamela Alexander have paid the Administrative Committee $12,551.02 out of the $18,826.52 that the Plan paid on behalf of Brandon for his medical costs. (Defs.' LR 56.1(a)(3) ¶ 9.)

## DISCUSSION

Pursuant to Rule 56(c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When considering the evidence submitted by the parties, the court does not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. *NFLC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). "If no reasonable jury could find

3

for the party opposing the motion, it must be granted." *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995).

The Administrative Committee has moved for summary judgment on the following grounds: (1) the state court's ruling on the Motion to Adjudicate Subrogation Claim has no collateral estoppel effect on the instant action; (2) the Administrative Committee's interpretation of the Plan's reimbursement provisions, *i.e.*, that Pamela Alexander must reimburse the Plan 100% of the benefits paid on behalf of Brandon Alexander without a reduction for attorney's fees, was not arbitrary and capricious. The Alexanders have cross-moved for summary judgment arguing that the arbitrary and capricious standard of review is never applicable to reimbursement claims and accordingly, *de novo* review applies and the development of federal common law is appropriate to interpret the plan language in this case. The Court addresses each argument in turn.

First, the Administrative Committee argues that the state court's ruling on Brandon Alexander's Motion to Adjudicate the Subrogation Claim against Blue Cross/Blue Shield, the third-party administrator for the Plan, does not bar litigation in federal court as to whether the Alexanders owe 100% reimbursement to the plan. "Under Illinois law, collateral estoppel requires that: (1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action." *Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999).

As the Court discussed in its Memorandum Opinion and Order of January 11, 2001 in which the Court denied defendants' motion to dismiss based on *res judicata*, defendants have

4

failed to establish the first requirement that the issues decided in the prior adjudication are identical to issues presented in the current proceeding. "Because the Plan's instant claim arises under ERISA, specifically 29 U.S.C. § 1132(a)(3) . . . this claim lies within the exclusive jurisdiction of the federal courts. 29 U.S.C. § 1132(e)(1)." (Mem. Op. & Order of 1/11/01 at 8.) Therefore, even if the Court were to find that the Administrative Committee is in privity with the party in the prior action, Blue Cross/Blue Shield, the issue of whether the Alexanders owe 100% reimbursement pursuant to the explicit language of the ERISA-governed plan could not have been raised before the state court. *See Spitz v. Tepfer*, 171 F.3d 443, 447 (7th Cir. 1999); *Administrative Comm. v. Maxwell*, No. 99 C 3021, 2000 WL 286886, at *5 (N.D. Ill. Mar. 9, 2000); *Board of Trustees of Pipe Fitters' Welfare Fund Local 597 v. Adams*, No. 97 C 5592, 1999 WL 446688, at *3-4 (N.D. Ill. Jun. 23, 1999). Therefore, the Court finds collateral estoppel inapplicable.

Next, the Court must determine what level of scrutiny it should use to review the Administrative Committee's interpretation of the plan's reimbursement provisions. "Where a plan confers power on the administrator to exercise discretion, the appropriate standard of review is the deferential 'arbitrary and capricious' one." *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1019 (7th Cir. 1998). "If, on the other hand, the plan contains no such language, then a court must construe the terms of the plan *de novo*, applying principles of contract interpretation along with the federal common law of ERISA." *Health Cost Controls of Ill., Inc. v. Washington*, No. 95 C 3806, 1998 WL 483501, at *6 (N.D. Ill. Aug. 11, 1998), *aff'd*, 187 F.3d 703 (7th Cir. 1999), *cert. denied*, 528 U.S. 1136 (2000); *see Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Wells*, 213 F.3d 398, 403 (7th Cir.), *cert. denied*,

121 S. Ct. 441 (2000).

Relying solely on *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), defendants argue that the arbitrary and capricious standard of review is only applicable with regard to an administrator's denial of claims and is not applicable with regard to an administrator's interpretation of reimbursement provisions. However, *Firestone* does not stand for such a proposition. In that case, the Supreme Court held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. However, merely because the *Firestone* holding was limited to challenges regarding denial of benefits under 29 U.S.C. § 1132(a)(1)(B) does not necessarily mean that the arbitrary and capricious standard is inapplicable to other types of challenges,[2] including the challenge of an ERISA plan's interpretation of its reimbursement provision.

Unfortunately for defendants, there is binding authority directly on point that proves their theory incorrect. The Seventh Circuit applied the *Firestone* analysis in *Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Wells* (hereinafter "*Wells*"), in which a participant challenged an ERISA plan administrator's interpretation of the plan's reimbursement provision. 213 F.3d at 403. The *Wells* court stated that "[i]n cases in which the plan documents give the plan's administrator discretion to interpret the plans, our review is deferential." *Id.* (citing *Mers*, 144 F.3d at 1020). The court, however, stated that there was "no reference to discretion in the part of

---

[2]For example, the Seventh Circuit has employed the *Firestone* analysis in a case involving a participant's challenge of an ERISA plan administrator's interpretation of the plan's subrogation provision. *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1295-96 (7th Cir. 1993).

6

the plan documents that deals with the plan's right to reimbursement--only in the part that deals with benefits determinations." *Id.*

Thus, this Court must look to the specific language of the plan documents to determine which standard of review applies. It is undisputed that the Wrap Document, together with the 1998 Benefit Book, are the relevant plan documents. (Pl.'s LR 56.1(b)(3)(B) ¶ 2.)

The Wrap Document provides:

Plan Administrator. Except as otherwise provided in a Welfare Program:

(a) The Plan Administrator shall have sole discretion and authority to control and manage the operation and administration of the Plan.

(b) *The Plan Administrator shall have complete discretion to interpret the provisions of the Plan, make findings of fact, correct errors, and supply omissions.* All decisions and interpretations of the Plan Administrator made in good faith pursuant to the Plan shall be final, conclusive and binding on all persons, subject only to the claims procedure, and may not be overturned unless found by a court to be arbitrary and capricious.

(*Id.* ¶ 3 (emphasis added).)

In contrast to *Wells*, discussed above, the plan administrator's discretion clearly is not limited to benefit determinations, but applies to the interpretation of all provisions of the plan. Accordingly, the Court will review the Administrative Committee's interpretation of the reimbursement and attorney's fees provisions to see whether its determination that it is entitled to 100% reimbursement without reduction for attorney's fees is arbitrary, capricious, or unreasonable. *See e.g., Mason v. Loyola Univ. of Chicago*, No. 94 C 0560, 1994 WL 594720, at *2 (N.D. Ill. Oct. 28, 1994) (applying arbitrary and capricious standard of review to plan administrator's determination that the plan was entitled to reimbursement).

The 1998 Benefits Book provides in pertinent part:

7

**RIGHT TO REDUCTION AND REIMBURSEMENT (SUBROGATION)**
The plan has the right to 1) reduce or deny benefits otherwise payable by the Plan and (2) recover or subrogate 100% of the benefits paid or to be paid by the Plan on your behalf and/or your dependents to the extent of any and all of the following payments:

- Any judgment, settlement, or any payment, made or to be made, relating to the accident, including but not limited to other insurance.

- Any auto or recreational vehicle insurance coverage or benefits including, but not limited to, uninsured/underinsured motorist coverage.

- Business and homeowners medical liability insurance coverage or payments.

- Attorney's fees.

(Pl.'s LR 56.1(a)(3) ¶ 8.) The Administrative Committee provides that the "Right to Reduction and Reimbursement (Subrogation)" section applies to covered dependants as well as the participant. (*Id.* ¶ 9.) The 1998 Benefits Book states: "All attorney's fees and court costs are the responsibility of the participant, not the Plan." (Pl.'s LR 56.1(b)(3)(B) ¶ 7.)

Based on the above policy provisions, the Court cannot find that the Administrative Committee was unreasonable in interpreting the plan documents' reimbursement and attorney's fees provisions. The plan documents clearly and unambiguously provide that the Plan may recover 100% of the benefits paid by the plan on behalf of a participant's dependents to the extent of any judgment made relating to the accident and that the participant is responsible for all attorney's fees and court costs. It was not an abuse of discretion for the Administrative Committee to conclude that the plan documents required 100% reimbursement of benefits paid and disclaimed any obligation to pay for defendants' attorney's fees in the state court litigation.

In sum, because the Court finds that the Administrative Committee's determination was

not arbitrary and capricious, the Court grants the Administrative Committee's motion for summary judgment and denies the Alexanders' cross-motion. It is undisputed that Brandon and Pamela Alexander have paid the Administrative Committee $12,551.02 out of the $18,826.52 that the plan paid on behalf of Brandon for his medical costs. (Defs.' LR 56.1(a)(3) ¶ 9.) As noted in the Court's Memorandum Opinion and Order of January 11, 2001, the Administrative Committee does not seek interest on the amount paid. Therefore, the Court enters judgment in favor of plaintiff in the amount of $6,275.50.

## CONCLUSION

For the foregoing reasons, the Court grants the Plan's motion for summary judgment [docket nos. 8-1, 12-1] and denies defendants' cross-motion for summary judgment [21-1]. The Court enters judgment in favor of the Plan $6,275.50. This case is hereby terminated. This is a final and appealable order.

**SO ORDERED**  ENTERED: 3/30/01

**HON. RONALD A. GUZMAN**
**United States Judge**

9